No. 35,065

THE CITY OF CHERRYVALE, *Appellant,* v. FRANCES LETITIA WILSON et al., *Appellees.*

(112 P. 2d 111)

Opinion filed April 12, 1941.

*C. W. Mitchell,* of Cherryvale, and *Theo F. Varner,* of Independence, for the appellant.

*Sullivan Lomax,* of Cherryvale, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action for a declaratory judgment. The trial court sustained a demurrer to the petition. Plaintiff appeals.

The petition alleged that plaintiff was a municipal corporation, being a city of the second class, and gave the residence of certain defendants as in Missouri and Kansas; that about the 16th day' of June, 1901, plaintiff executed an agreement in writing with George H. Thompson and Alma Thompson, husband and wife, for a consideration of one dollar and the conveyance of certain rights in and to lands described, by which plaintiff agreed to furnish water for general farm use· and dairy purposes under certain specified conditions on·and to a half section of land in Montgomery county, of which land the Thompsons were then the owners; that at that time plaintiff had no authority to enter into a contract for obtaining water for public purposes for a period of more than twenty years and the agreement was *ultra vires* and void under the provisions of the Laws of 1897, chapter 82, section 12.

The petition further alleged that on or about the 26th day of June, 1901, the Thompsons, being owners of the half section, for a valuable consideration conveyed to plaintiff by warranty deed a portion of the half section about fifty feet square described by metes and

bounds in the petition, for the purpose of erecting and maintaining a storage tank thereon in connection with the waterworks plant belonging to plaintiff; that in the same deed the Thompsons conveyed to plaintiff the right to enter upon the half section for the purpose of constructing, maintaining and repairing a water pipe line to and from the storage tank. A copy of the warranty deed was attached to the petition.

The petition further alleged that shortly thereafter plaintiff constructed a standpipe upon the fifty-foot tract referred to and also constructed a ten-inch pipe line from the storage tank across the half section to a lake lying east of this land, and for a number of years plaintiff procured its water supply from this lake and pumped the water through this pipe line over this land to the storage tank, from which point the water was distributed under gravity pressure to the consumers.

The petition alleged further that about the first of January, 1912, the city abandoned the lake as a source of water supply and began drawing its water from the Verdigris river and was doing so at the time the petition was filed; that after this change was made the city had no further use for the pipe line to the lake and ceased to use it for filling its standpipe but was using the standpipe and continued to use the standpipe and land deeded for a standpipe, the water being pumped to this standpipe from the Verdigris river and no longer from the lake; that from the date of the deed referred to plaintiff had been in open, notorious, hostile and continuous possession of the tract of land.

The petition alleged also that at all times since the execution of the so-called agreement set out the plaintiff had furnished and was at the time the action was commenced furnishing water for general farm use and dairy purposes from the ten-inch pipe line to the land described and to the occupants of it.

The petition further alleged that this land was not and had never been within the city limits of plaintiff and its occupants were not citizens or residents of the city; that at the time the action was begun the governing body of the city of Cherryvale was a board of commissioners and at the time of the execution of the agreement the governing body was a city council and the present governing body of the city was entirely different from the governing body of the city at the time the agreement was executed, both as to its form and as to its personnel, and that none of the present city officers were

officials of the city at the time the agreement was executed; that the defendant Frances Letitia Wilson was the owner of an undivided one-half interest in and to the fee of the half section mentioned except the fifty-foot tract, and that defendant Miller or his assigns were the owners of an undivided interest in and to the fee, and that defendant Rousel claimed some right or interest in the land.

The petition then contained the following allegation:

"That on or about the 5th day of December, 1939, this plaintiff informed the owners of the said land, through their agent, Sullivan Lomax, of its intention to discontinue the furnishing of water to the said land and to the occupants thereof and to peaceably enter upon the said land and remove therefrom its said ten-inch water pipe line, and asked the consent of the said owners, which consent was then and there refused; that efforts have been made to arrive at an amicable adjustment of the claims of the parties hereto, with respect to the discontinuance of the water service and the removal of the said pipe line, but without success; that a controversy has arisen between the plaintiff and the defendants as to the legal construction of the so-called agreement and the rights of the respective parties under same, and as to whether or not the city of Cherryvale may properly discontinue said water service and remove its said pipe line, without infringing upon the rights of others or jeopardizing its own rights in the tract of land which it owns for a standpipe site."

The prayer of the petition was as follows:

"Wherefore, the plaintiff prays for a declaratory judgment from this court, fixing and determining the rights of the parties hereto under the so-called agreement and the deed as above set out, declaring said so-called agreement to be void and of no effect and that the plaintiff have a legal right to discontinue supplying water to the said land and to peaceably enter upon the said land and remove its pipe line therefrom, and confirming the ownership of the city of Cherryvale in and to the tract of land purchased for a standpipe site."

The water right-of-way agreement which was attached to the petition, after describing the land and the parties, provided:

"The city of Cherryvale, party of the first part, agrees: to furnish water for general farm use and dairy purposes to the party of the second part, his heirs, executors and administrators, at four points on the above described lands, for so long a period of time as the party of the first part shall have and maintain any part of the system of city water-works now being constructed upon said lands. The points at which the 'water boxes' from which the water shall be supplied to the party of the second part, shall be selected by the said second party at a distance of twenty feet from the water main, and water shall be supplied in sufficient quantities as may be necessary for house and barn purposes, and to supply all livestock actually owned or kept on the above described lands, by the party of the second part."

This agreement was entered into June 28, 1901. The deed, which was entered into June 26, 1901, stated that the parties bargained and sold the land described, and contained the following clause:

"And the grantors herein, in addition to the absolute conveyance above made, hereby grant and convey to the said city of Cherryvale, the right and privilege to enter upon, to construct, maintain and repair a water-pipe-line and mains on the northeast quarter of section twenty-one (21) and the northwest quarter of section twenty-two (22), in township thirty-two (32), in range seventeen (17), in the said county of Montgomery and state of Kansas, to and from said storage tank.

"Should the lands hereby conveyed, and the rights and privileges hereby granted, ever cease to be used by the grantee for the purpose of maintaining a water-works plant, then and in that event, all the covenants herein made shall become null and void, and all lands and rights herein conveyed shall revert to the person or persons then owning the adjoining lands, after the removal of the plant."

The defendants filed a motion asking the court for an order directing the plaintiff to separately state and number its causes of action for the reasons that it appeared from the petition that plaintiff had attempted to set forth a cause of action for a declaratory judgment construing a contract and deed, and had stated therein and blended therewith a cause of action asking the court for an order or judgment finding and determining that it had a legal right to enter the premises of defendants for the purpose of taking up and removing therefrom a ten-inch water pipe line without the consent of defendants and had attempted to set up therein a cause of action for the cancellation of a written instrument, and that it had attempted to set up a supposed cause of action for the purpose of quieting its title to a tract of land which it claimed to have purchased for a standpipe location, and for the reason that all of these causes of action were blended together so it was impossible to tell where one began and the other ended.

After colloquy the court made the following statement in its journal entry:

"And the court, having heard arguments of counsel for and against the said motion, inquires of the plaintiff if it admits that the so-called agreement and the deed alleged in the petition are a part of one transaction and to be construed together, and counsel for the plaintiff thereupon states that such is the plaintiff's theory of the case and that the said so-called agreement and deed may be construed together. The court then finds that the said motion should be overruled."

The defendants interposed a general demurrer to the petition on the ground that it did not state facts sufficient to constitute any

cause of action in favor of plaintiff and against defendant. This demurrer was sustained and the plaintiff has appealed. Two arguments are presented to this court on appeal:

The first one is on the question of whether or not the petition stated a cause of action for a declaratory judgment.

The second argues the question of whether or not the plaintiff was entitled to have the construction given the two instruments to the effect that it might remove the ten-inch intake line and use the pipe so removed for other purposes in the water system even though in so doing it would be forced to discontinue to furnish water for general farm and dairy uses to defendants.

The city argues that it has the right to remove the ten-inch abandoned intake line and the right to discontinue furnishing free water to defendants and that the exercise of those rights would not terminate its ownership in the real estate or easements conveyed to the city, now being used.

We shall first deal with the question of whether or not the petition stated a cause of action upon which a declaratory judgment should be rendered.

The statute pursuant to which actions for declaratory judgment are brought is G. S. 1935, 60-3127 to 60-3132. These sections provide, in part, as follows:

"In cases of actual controversy, courts of record within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for. Controversies involving the interpretations of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right." (G. S. 1935, 60-3127.)

"This act is declared to be remedial; its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor; and it is to be liberally interpreted and administered, with a view to making the courts more serviceable to the people." (G. S. 1935, 60-3132.)

Since the passage of this act this court has consistently held that an action could not be brought pursuant to it unless there was an actual controversy between the parties. (See *West v. City of Wichita*, 118 Kan. 265, 234 Pac. 978; also, *Purity Oats Co. v. State*, 125 Kan. 558, 264 Pac. 740; also, *Williams v. Flood*, 124 Kan. 728, 262 Pac. 563.)

This rule requires us to examine the petition in this case to ascertain whether it sets out facts which constitute an actual controversy. The paragraph which contains these allegations has already been quoted here. It states that the plaintiff informed defendants of its intention to discontinue the furnishing of water and to remove its ten-inch pipe line and that plaintiff asked consent of the owners, and that this consent was refused. The petition then states that efforts had been made to arrive at an amicable adjustment of the claims of the parties but without success. Are the above facts a sufficient allegation of an actual controversy between the parties to warrant the issuance of a declaratory judgment thereon?

Nowhere in the petition is there any allegation of what the defendants claim their rights to be under the terms of the deed and contract, nor is there any allegation that the defendants would take any particular action to the detriment of the city if it should discontinue the furnishing of water to defendants. It is true we are able to ascertain the existence of a difference of opinion between counsel for the parties from an examination of the briefs, but the facts upon which the party seeking a declartory judgment relies and just what the controversy is must clearly appear in the pleadings. This must be the rule, else courts would be entering declaratory judgments and parties would claim the judgments applied to some situation the facts of which were not before the court. This would tend to make the courts of less service to the people rather than of more service, as this statute was intended to do.

Plaintiff points out that the ground upon which the defendants filed their demurrer was that the petition did not state facts sufficient to constitute a cause of action. Plaintiff argues that the proper ground was that the trial court did not have jurisdiction.

It is rare that a demurrer is an appropriate pleading for the defendant to file to a petition for a declaratory judgment. Assuming there is an actual controversy between the parties, the petition should state the facts out of which the controversy arose, should state clearly the view or claim of plaintiff, and also state clearly the view or claim of the defendant, and the court should be asked to adjudicate the controversy. The appropriate pleading for defendant to file is an admission that the controversy arose from the facts stated by plaintiff, and that plaintiff's contention is correctly stated; also, that defendant's contention is correctly stated, if, of course, defendant agrees that the matters are so pleaded. If defendant

thinks the facts giving rise to the controversy are not accurate or fully stated, or that the contention of the plaintiff or that the contention of the defendant is not accurately or fully stated, his answer should plead the facts and the contentions as he understands them to be. If defendant pleads the facts and the contention is contrary to that pleaded by plaintiff, plaintiff by reply should either admit those, or deny them. Normally, a declaratory judgment action is not well suited to a case in which there is a controversy as to how the contentions of the parties arose, or as to what they are; these things should be agreed upon in the pleadings, or some other form of an action should be brought.

The demurrer in this case, however, did raise the question of whether the petition stated a cause of action for a declaratory judgment.

The judgment of the trial court is affirmed.