111 N.J. Super. 400 (1970)
268 A.2d 354
PHILIP CAMARCO, JR., A CITIZEN AND RESIDENT OF NEW JERSEY, AND RUTH SEGLIN, A CITIZEN AND RESIDENT OF THE CITY OF ORANGE, PLAINTIFFS,
v.
CITY OF ORANGE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, GENNARO D'ANGELIS, IN HIS CAPACITY AS DIRECTOR OF THE POLICE DEPARTMENT OF THE CITY OF ORANGE, JOSEPH MAGRINO, IN HIS CAPACITY AS CORPORATION COUNSEL OF THE CITY OF ORANGE, AND THOMAS J. FREDA, IN HIS CAPACITY AS CLERK OF THE MUNICIPAL COURT OF THE CITY OF ORANGE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 10, 1970.
*401 Mr. Mitchell Melnikoff attorney for plaintiffs.
Mr. Jeffrey R. Lowe attorney for defendants.
YANCEY, J.C.C. (temporarily assigned).
On July 9, 1969 Philip Camarco was arrested by members of the Orange Police Department for "loitering" in a local parking lot in violation of an ordinance of the City of Orange which provided:
No person or persons shall loiter or assemble in or about any street or public place or at the corner of any streets, or in or about the front of any building; or shall loiter in or upon any street or public place in any parked automobile or other vehicle; or utter any loud, indecent, abusive or offensive language, or address or make any offensive remarks or comments to or upon any person or persons in any street or public place, or obstruct or interfere with any person or persons lawfully being in or upon any street, public place or building under a penalty of not more than Fifty Dollars or ten days in jail for the first offense, and not more than Two Hundred Dollars or ninety days in jail for each and every subsequent offense.
On motion of Camarco's counsel, prior to a municipal court hearing of this complaint, an order was entered in the Superior Court declaring that the loitering section of the ordinance was invalid and ineffective because it failed to set forth norms and standards. The complaint against the plaintiff Camarco was thereby dismissed.
Thereafter, plaintiffs filed a complaint for a declaratory judgment which sought to have the entire ordinance declared *402 unconstitutional. While that action was pending, Orange amended its loitering statute. Plaintiffs subsequently amended their complaint for declaratory judgment, alleging that the new ordinance is unconstitutional. The case is before this court on a motion for summary judgment made by plaintiffs. Defendant city has entered a cross-claim for summary judgment, alleging that plaintiffs have no standing to claim relief under the Declaratory Judgment Law and, in the alternative, that the new ordinance is constitutional.
Defendant argues that since there are no charges pending against plaintiffs, either under the old or new ordinance, he lacks standing to attack its constitutionality. Since the issue of standing could be dispositive of the entire case, the court will deal with it first. It is essential for relief under the Declaratory Judgment Law that there be a finding of both justiciability and standing. N.J. Builders Ass'n. v. Division on Civil Rights, 81 N.J. Super. 243 (Ch. Div. 1963); N.J.S.A. 2A:16-50, 51, 53.
Our courts have held that in declaratory judgment actions no wrong need be proved, but the mere existence of a claim, or threat of a possible claim, disturbing the peace of plaintiff's freedom by casting doubt or uncertainty upon his rights or status, establishes the requisite condition or justiciability for a declaratory judgment action. N.J. Home Builders Ass'n v. Division on Civil Rights, supra; Trustees of Rutgers College v. Richman, 41 N.J. Super. 259 (Ch. Div. 1956). Plaintiff Camarco was arrested under the predecessor of the present amended ordinance. He asserts that he does not know why his actions of peacefully assembling in a parking lot caused him to be arrested. As noted, his arrest was later declared invalid because the loitering ordinance was held to be invalid and ineffective. Camarco now stands in a precarious position because he does not know if these same actions are lawful or whether they will subject him to arrest under the amended ordinance. "A plaintiff is entitled to relief from the uncertainty and insecurity as to the legal limitations and obligations which confront him each day on *403 the streets of the City." Weinstein v. City of Newark, 100 N.J. Super. 199, 206 (Law Div. 1968).
Plaintiff clearly has standing to attack the constitutionality of the ordinance. He is more qualified to question the ordinance than most other citizens of Orange in that he was arrested under the former ordinance which dealt with the same action of loitering. Refusal to grant plaintiff standing might in effect deny his constitutional rights of expression and assembly, because he would be unwilling to gather with his friends in conversation for fear of criminal prosecution by the Orange police. "The threat of sanctions may deter * * * almost as potently as the actual applications of sanctions." NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963).
Defendants argue that there are no criminal charges pending against Camarco by the City of Orange, and therefore he lacks standing to question the ordinance. If this argument were accepted, it would mean that a person in plaintiff's position would have to wait until he was arrested before he could question the legality of a statute. The Supreme Court of the United States, in dealing with the federal Declaratory Judgment Act, which is very similar to the one in New Jersey, stated, "Because of the sensitive nature of constitutionality protected expression we have not required that all of those subject to overbroad regulations risk prosecution to test their rights." Dombrowski v. Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965). Our own Supreme Court has held that a person wishing to test the constitutionality of a statute should bring a proceeding under the Uniform Declaratory Judgment Act rather than have himself arrested in order to bring a test case. State v. Baird, 50 N.J. 376 (1967). The criteria of standing and justiciability for relief under the Uniform Declaratory Judgment Act are clearly present here, and therefore this action is properly before this court.
The court will now turn to the main issue in this case: the constitutionality of the Orange loitering ordinance. Although *404 it has been said that loitering statutes or ordinances are necessary for the protection of society and the preservation of the public peace, an increasing number of courts have in recent years struck down legislation directed merely at loitering, especially where the term was not defined or the circumstances under which the statute would apply were not sufficiently set out. Shuttlesworth v. Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965). The "Achilles heel" of those loitering statutes which have been declared void for being unconstitutionally vague and arbitrary have been that they failed to prescribe any standard capable of intelligent human evaluation so as to enable one chargeable with their violation to discover those conditions which convert conduct which is prima facie lawful into that which is criminal. Commonwealth v. Carpenter, 325 Mass. 519, 91 N.E.2d 666 (Sup. Jud. Ct. 1950). A review of some of the leading decisions from other jurisdictions which have dealt with the constitutionality of loitering ordinances highlights this fact.
An example is People v. Diaz, 4 N.Y.2d 469, 176 N.Y.S. 2d 313, 151 N.E.2d 871 (Ct. App. 1958), in which the ordinance in question stated only that no person shall lounge or loiter about any street or street corner in the City of Dunkirk. The ordinance was declared invalid because it was vague and indefinite in that it failed to provide any standards or criteria by which the prohibited conduct might be tested. In the United States District Court in Kentucky, a Louisville ordinance which punished a person who loiters in a public place and is unable to give a satisfactory account of himself was held to be overbroad, vague, and hence unconstitutional. Baker v. Bindner, 274 F. Supp. 658 (D.C. Ky. 1967). Numerous other loitering statutes have been held to be invalid due to their lack of clear and precise standards. Seattle v. Drew, 70 Wash.2d 405, 423 P. 2d 522 (Sup. Ct. 1967); Soles v. Vidalia, 92 Ga. App. 839, 90 S.E.2d 249 (App. Ct. 1955); Commonwealth v. Carpenter, 325 Mass. *405 519, 91 N.E.2d 666 (Sup. Jud. Ct. 1950); Territory of Hawaii v. Anduha, 48 F.2d 171 (9 Cir.1931).
On the other hand, where loitering statutes have provided standards they have generally been upheld by the courts. The United States Supreme Court in Shuttlesworth v. City of Birmingham, supra, held that a municipal ordinance which penalized persons who stand on a sidewalk so as to obstruct free passage and refuse to obey a request by a police officer to move was not unconstitutional on its face. Note that only a certain type of loitering was prohibited  that of obstructing free passage on a sidewalk  and that the ordinance took effect only if a police officer first requested the persons to move and they refused to do so. In another case, involving a disorderly conduct ordinance of Atlanta, Georgia, that subsection was declared valid which denominated as disorderly conduct acts performed in a violent or tumultuous manner which places another person in fear of safety of his life, limb or health, because it clearly and precisely delineated its reach in words of common understanding. Hunter v. Allen, 286 F. Supp. 830 (D.C. Ga. 1968). However, other subsections of the same ordinance, which described jostling or roughly crowding any person in a public place, were held to be invalid for failure to prescribe conduct within sufficiently narrowly drawn limits which evinced an objective determination of prohibited conduct.
The leading case in New Jersey, State v. Caez, 81 N.J. Super. 315 (App. Div. 1963), stated that an ordinance may not unreasonably or unnecessarily interfere with a person's freedom, whether it be to move about or stand still. The Appellate Division went on to say (at 319) that an ordinance which proposes to restrict that freedom must contain standards which make it reasonable and prevent arbitrary enforcement.
The Orange ordinance is a revised form of the earlier loitering ordinance that was declared invalid for lack of standards by which to judge the unlawful conduct. Orange *406 then set out to formulate a loitering ordinance which would not unreasonably or arbitrarily interfere with a person's constitutional freedoms.
Adhering closely to the guidelines set up by the American Law Institute in its Model Penal Code, Proposed Official Draft, § 250.6 on loitering, Orange composed and adopted the following new loitering ordinance. The relevant sections of that ordinance provide:
SECTION 1. Definitions. As used in this Section.
(a) "Loitering" shall mean remaining idle in essentially one location and shall include the concepts of spending time idly, loafing or walking about aimlessly, and shall also include the coloquial [sic] expression "hanging around."
SECTION 2. Certain types of Loitering Prohibited. No person shall loiter in a public place in such manner as to:
(a) Create or cause to be created a danger of a breach of the peace.
(b) Create or cause to be created any disturbance or annoyance to the comfort and repose of any person.
(c) Obstruct the free passage of pedestrians or vehicles.
(d) Obstruct, molest, or interfere with any person lawfully in any public place as defined in Section 1 (b). This paragraph shall include the making of unsolicited remarks of an offensive, disgusting or insulting nature or which are calculated to annoy or disturb the person to, or in whose hearing, they are made.
SECTION 3. Discretion of Police Officer.
Whenever any police officer shall, in the exercise of reasonable judgment, decide that the presence of any person in any public place is causing or is likely to cause any of the conditions enumerated in Section 2, he may, if he deems it necessary for the preservation of the public peace and safety, order that person to leave that place any person who shall refuse to leave after being ordered to do so by a police officer shall be guilty of a violation of this Section.
Unlike its predecessor, the amended Orange ordinance does not prohibit all acts of loitering. Quite to the contrary, it goes into careful detail in defining which acts of loitering are unlawful. For instance, section 2(c) states that no person shall loiter in a public place in such manner as to obstruct the free passage of pedestrians or vehicles. This section thereby sets up a criterion by which one can judge *407 whether the loitering involved is unlawful. Furthermore, the ordinance takes effect only after a person has refused to move upon the request of a police officer. The ordinance is very specific in requiring the police officer to first ask the individual or individuals to move on before he can make an arrest under the statute. This is the very same requirement which caused the United States Supreme Court to uphold the constitutionality of the Birmingham loitering ordinance in Shuttlesworth v. Birmingham, supra.
This court, after carefully examining this ordinance, is of the opinion that it is constitutional on its face.
Plaintiffs complain that the ordinance delegates to the police an excessive amount of power and discretion. They cite Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), as standing for the proposition that an ordinance is unconstitutional if the legality of a person's actions depends upon the opinion of a policeman, thereby permitting him to make a crime out of what is protected activity. This court has no argument with plaintiffs' interpretation of the Cox case. The ruling there does not apply in the present case because there are clear and definite criteria set forth in the Orange ordinance by which to judge the prohibited actions; it is not let solely to the police officer's discretion. Furthermore, the court in Cox went on to state:
It is, of course, undisputed that appropriate, limited discretion, under properly drawn statutes or ordinances, concerning the time, place, duration, or manner of use of the streets for public assemblies may be vested in administrative officials, provided that such limited discretion is exercised with uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination * * * and with a systematic, consistent and just order of treatment, with reference to the convenience of public use of the highways." [379 U.S. at 558; 85 S.Ct. at 466.]
Therefore, in view of the standards set forth in the ordinance, an excessive amount of discretion is not placed in the police officer's hands.
*408 In view of the foregoing, I hereby find that the ordinance entitled, "An Ordinance to Prevent Loitering Within the City of Orange" is constitutional. It does not suffer from overbreadth or vagueness, and is therefore not violative of a person's First Amendment rights or due process of law. Defendant's cross-motion for summary judgment is hereby granted and plaintiffs' motion for summary judgment is hereby denied.